IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES, | : | CRIMINAL ACTION |
| | : | NO. 01-379 |
| | : | |
| v. | : | |
| | : | |
| HECTOR SANTIAGO | : | |
| | : | |
| Defendant. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                    January 30, 2008

Before this Court is Hector Santiago's amended petition for habeas relief under 28 U.S.C. § 2255.  Santiago bases this amended petition on the allegation that his then-counsel, Lewis T. Savino, Esquire, and his associates (collectively "Savino"), were ineffective.  Santiago claims that Savino had a conflict of interest in contemporaneously representing Santiago and a defendant in another criminal proceeding, James Ellis ("Ellis"), who was a potential witness against Santiago in Santiago's case. For the reasons that follow, Santiago's § 2255 petition will be denied.

I.   PROCEDURAL HISTORY

On September 20, 2001, Santiago pleaded guilty to four counts of violating the drug and gun laws of the United States.

-1-

His conviction was affirmed by the Third Circuit on February 22, 2002.  On August 16, 2004, Santiago filed his first petition for habeas relief under 28 U.S.C. § 2255.  On April 14, 2005, Santiago moved to supplement his petition with an additional claim pursuant to Fed. R. Civ. P. 15(a).  In its February 13, 2007, memorandum and order, the Court denied all of Santiago's habeas claims, save his supplemental claim that is before the Court at this time.  United States v. Santiago, 2007 U.S. Dist. LEXIS 9886 (E.D. Pa. Feb. 13, 2007).  Counsel was appointed and an evidentiary hearing was ordered, ultimately taking place on May 30, 2007.[1]  See United States v. Nino, 878 F.2d 101, 103 (3d Cir. 1989) (holding that a petitioner is entitled to an evidentiary hearing as to the merits of his claim unless it is clear from the record that the prisoner is not entitled to relief).  Following the hearing, the Court instructed both parties to submit their respective legal memoranda and on December 4, 2007, the Court entertained oral argument.

II.  FACTS

        On August 25, 1999, Ellis was indicted for possession of a controlled substance and retained the services of Savino.  Initially, Ellis entered a plea of not guilty to both this indictment and the superceding indictment.  On March 22, 2000,

_____

        [1] This hearing was initially ordered for April 9, 2007.

however, he pleaded guilty to the charges pursuant to a plea agreement with the government.[2]  On February 16, 2001, Ellis was sentenced[3] by Judge J. Curtis Joyner in the Eastern District of Pennsylvania, to 60 months in prison, five years of supervised release, a fine of $1,500 and a special assessment of $100.  He was represented by Savino throughout the proceedings.

Santiago was indicted on July 10, 2001.  On July 13, 2001, he pleaded not guilty and trial was scheduled for September 20, 2001.  On the eve of trial, Santiago expressed a willingness to plead guilty and cooperate with the government.  On September 19, 2001, Santiago attended his first proffer session with AUSA Anita Eve ("Eve") and the following day, Santiago pleaded guilty

---

[2] Ellis' plea agreement included a promise by the government to file a U.S.S.G. § 5K1.1 motion in return for Ellis' cooperation.  Any cooperation provided by Ellis ended by August 1, 2001.  (Dec. 4, 2007, Hr. Tr. at 19)

[3] Bernard Siegel, appointed counsel for Santiago during his § 2255 proceedings, argued at the December 4, 2007, hearing that Ellis was not sentenced until August of 2001, and thus there was one month during which Savino represented both defendants, after both had been indicted, but before either had been sentenced. Savino corroborated this during the evidentiary hearing where he testified that since Ellis was sentenced in August of 2001, there was approximately one month of overlap in representing the two defendants.  Hr. Tr. at 8, May 30, 2007.  The docket simply says otherwise.  Ellis was sentenced on February 7, 2001, and judgment was entered on February 16, 2001.  United States v. Ellis, No. 99-515, Judgment, doc. no. 53 (E.D. Pa. Feb. 16, 2001).  Santiago was not indicted until five months later.  United States v. Santiago, No. 01-379, Indictment, doc. no. 1 (E.D. Pa. Jul. 10, 2001).

to all pending charges pursuant to a plea agreement.[4]   Santiago
was sentenced on February 15, 2002, to 240 months in prison, six
years of supervised release, a special assessment of $500 and a
fine of $1,000.  He too had been represented by Savino throughout
the criminal proceedings.


III.  DISCUSSION

        28 U.S.C. § 2255 provides an avenue through which a
prisoner can challenge the constitutionality of his federal
sentence.  United States v. Timmreck, 441 U.S. 780, 784 (1979).
The law is clear that a defendant has a Sixth Amendment right not
just to counsel, but to "reasonable effective assistance" of
counsel.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  To
obtain relief for a violation of this right, a defendant must
show both that, (1) his or her attorney's performance was, under
all the circumstances, unreasonable under prevailing professional
norms, see id. at 687-91; and (2) there is a "reasonable
probability that, but for counsel's unprofessional errors, the
result would have been different," id. at 694.  "A reasonable

---

        [4] Santiago pled guilty to Counts Four through Eight of the
indictment.  Those counts included possession of a firearm by a
convicted felon, in violation of 18 U.S.C. § 922(g)(1),
distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1),
possession with intent to distribute cocaine, in violation of 21
U.S.C. § 841(a)(1), and possession of a firearm in furtherance of
a drug trafficking crime, in violation of 18 U.S.C. §
924(c)(1)(A).

probability is a probability sufficient to undermine confidence in the outcome." Id.

If there is a conflict of interest between counsel and the client, prejudice under the Strickland test is presumed. Gov't of the Virgin Islands v. Zepp, 748 F.2d 125, 134 (3d Cir. 1984) (citing Cuyler v. Sullivan, 446 U.S. 335, 350 (1980). The Third Circuit has defined an actual conflict as follows: "if, during the course of representation, the defendant's interests diverge with respect to a material factual or legal issue or to a course of action." Id. at 136 (citing Sullivan v. Cuyler, 723 F.2d 1077 (3d Cir. 1983). In such an event, the petitioner need only show that the actual conflict "adversely affected counsel's performance" to prove ineffective assistance of counsel. See id. at 134. In cases involving an alleged conflict of interest based on defense counsel's representation of a prosecution witness, the courts have generally examined the particular circumstances to determine if counsel's "undivided loyalties" lie with his current client. E.g., United States v. Martin, 454 F. Supp. 2d 278, 283 (E.D. Pa. 2006); United States v. FMC Corp., 495 F. Supp. 172 (E.D. Pa. 1980).

There are two alternative scenarios in which the alleged conflict might have occurred during Savino's representation of Santiago. First, an overarching conflict of interest could have been present from the first day Savino was

retained to represent Santiago.  Second, during the proffer session on September 19, 2001, assuming Eve, in the presence of Savino, told Santiago that Ellis was going to be a witness against him at trial, Savino, though his representation of Ellis, knew this to be inaccurate yet remained silent.

As to the first claim, that Savino had a continuing conflict of interest in representing Ellis and Santiago, the one recurring constant at the evidentiary hearing was the lack of evidence linking Ellis to Santiago prior to the September 19, 2001 proffer session between Eve[5] and Santiago.  It is now evident that Ellis never mentioned Santiago's name at any of the proffer sessions prior to his sentencing and Santiago's name did not appear in any of the 302[6] forms prepared by the FBI during his proffer sessions.  Neither was Santiago referenced in the government's U.S.S.G. § 5K1.1 motion filed on behalf of Ellis, nor during the sentencing colloquy conducted by Judge Joyner at Ellis' sentencing.  Lastly, Ellis was not included in the prosecution's internal investigation memo drafted in preparation of Santiago's indictment.  Most damning to Santiago's argument is that Ellis had pleaded guilty and had been sentenced five months

---

[5] Eve was also the prosecutor throughout Ellis' trial.  She denies that Santiago's name was ever referenced during plea negotiations with Ellis.

[6] 302 forms are generated during the course of a proffer session by an attending FBI agent to document the substance of the meeting.

before Santiago had even been indicted.  In fact, until September 19, 2001, the day Santiago attended his first proffer session with the government, the prosecutions of these two defendants bore zero relationship to one another.[7]

As to the second claim, that Savino failed to alert Santiago that Ellis would not in fact be testifying against him, the only alleged claim is that Eve, during the first proffer session with Santiago, purportedly told Santiago that Ellis would be testifying against him if he went to trial.  The inference that Santiago would ask this Court to draw is that Eve provided him with incorrect information to persuade him to plead guilty in this case.  According to Santiago, the conflict arose when Savino failed to tell Santiago that Eve's alleged statement was untrue, i.e., Ellis would not be testifying against Santiago if Santiago did in fact go to trial.  To succeed, Santiago must demonstrate that Eve indeed gave him incorrect information, that the information motivated him to plead guilty, and that Savino, assuming that he knew this information to be false, failed to tell him so.

It is quite doubtful that Eve made the alleged statement to Santiago.  At the evidentiary hearing, Eve credibly denied making the statement, and both Savino and FBI agent Kevin

---

[7] There was, however, a photo of Santiago found in Ellis' car at the time of Ellis' arrest.

Lewis, who were also present at the proffer, have no recollection of any such statement being made by Eve.[8]  Furthermore, Eve had no motive for making the statement.  Santiago had already indicated a willingness to cooperate with the government and to plead guilty, making further attempts by Eve to dissuade him from going to trial superfluous.  In fact, Savino testified at the hearing that it was Santiago who made the decision to plead guilty "in the eleventh hour," Hr. Tr. at 8, May 30, 2007, and Eve repeatedly testified that it was Santiago who contacted the government expressing a willingness to plead.  Id. at 33.

It is true that at the hearing, Santiago testified that he initially refused to agree to some of the provisions of the proposed plea agreement, suggesting that his decision to plead guilty had not been finalized as of the date of the September 19, 2001, proffer session.  Id. at 16.  But, the fact remains that Santiago's mind was made up; he wanted to enter a plea of guilty and avoid trial, regardless of whether he disagreed with a few provisions of the plea agreement.[9]  In any event, the plea

_____

[8] In fact, at the evidentiary hearing, Lewis testified that it was Santiago who mentioned Ellis' name when discussing those individuals with whom he had narcotics dealings.

[9] As a matter of fact, Santiago appeared at his change of plea hearing with the intent to offer an open plea the day immediately following the proffer session.  It was not until halfway through the change of plea colloquy that Santiago expressed a willingness to cooperate.  Sep. 20. 2007, Hr. Tr. at 23.

agreement was, in fact, signed by Santiago on the day of his
change of plea hearing, September 20, 2001, with the
objectionable provisions crossed out.  These provisions, however,
had nothing to do with Santiago's guilt or innocence, or his
agreement to cooperate, but rather concerned issues to be
resolved at sentencing, such as the amount of drugs found.
Furthermore, at the time the proffer took place, Savino had no
reason for failing to inform Santiago that the alleged statement
by Eve was untrue.  His other client, Ellis, had been sentenced
five months prior, meaning that the extent of his cooperation was
complete.[10]  If Eve had in fact given Santiago incorrect
information, Savino would not have had any reservations about
correcting it.

        Finally, at the change of plea hearing on September 20,
2001, Eve outlined in detail the evidence that would be presented
by the government if a trial were to take place.  Ellis' name was
not included in the recitation Eve provided to the Court.
Moreover, the amount of evidence that the government had against
Santiago was substantial, belittling any argument that the
prospect of Ellis' testimony persuaded Santiago to plead guilty.
Hr. Tr. at 15-17, Sep. 20, 2001.  Without a motive for Eve to lie

---

        [10] Of course, there is the possibility that the Government
could have filed a 35(b) motion for any cooperation Ellis
provided regarding Santiago, but there has been no allegation of
this, nor any evidence to support it.

or for Savino to remain silent, and without any corroborating
evidence that the alleged statement by Eve was even made,
Santiago's version of what happened at the proffer session on
September 19, 2001, is not credible.


IV.  CONCLUSION

        For the above reasons, the motion is denied.

```
               IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA        :     CRIMINAL ACTION
                                :     NO. 01-379
        v.                      :
                                :
HECTOR SANTIAGO                 :
                                :
```

                                ORDER

**_____AND NOW,** this **30th** day of **January, 2008,** it is hereby

**ORDERED** that the defendant's motion to vacate his sentence (doc.

no. 50) is **DENIED.**


        **AND IT IS SO ORDERED**



                        **S/Eduardo C. Robreno**
                        **EDUARDO C. ROBRENO, J.**